**O. C. NORD, Plaintiff and Appellant,**

**v.**

**William L. GUY, Governor, Arne Dahl, Commissioner of Agriculture and Labor, and Helgi Johanneson, Attorney General, constituting the Industrial Commission of the State of North Dakota; and Martin J. Kruse, John Conrad, Albert Haas, Elvira Jestrab, Mildred Johnson, Fred R. Orth and Henry P. Sullivan, as the State Board of Higher Education of the State of North Dakota, Defendants and Respondents.**

**No. 8285.**

Supreme Court of North Dakota.

March 23, 1966.

Shaft, Benson, Shaft & McConn, Grand Forks, for plaintiff and appellant.

Helgi Johanneson, Atty. Gen., and Gerald W. VandeWalle, Asst. Atty. Gen., Bismarck, for defendants and respondents.

KNUDSON, Judge.

This is an appeal from a summary judgment of the District Court for Burleigh County dismissing the complaint of the plaintiff challenging the constitutionality of Chapter 155, Session Laws of 1965, hereinafter designated as the Act. The pertinent part of the Act provides:

§ 1. Declaration and Finding of Public Purpose.) The legislative assembly of the state of North Dakota hereby declares and finds that it is and has been its purpose in preparing and adopting the provisions of this Act to promote the advancement of the citizens of this state through making available more adequate facilities for higher education in the state of North Dakota, thereby promoting the economic welfare of the citizens of the state and the economic progress of the state.

§ 2. State of North Dakota General Obligation Bonds—Higher Education Facilities Series—Bond Purpose.) An issue of general obligation bonds of the state, to be designated as State of North Dakota Bonds, Higher Education Facilities Series, in the amount of ten million dollars, is hereby authorized under the authority of section 182 of the Constitution, for the sole purpose of providing and equipping facilities at the state-supported institutions of higher education. As used in this Act, the term "facilities" shall mean and include buildings used for classroom, library, laboratory, workshop, administration and maintenance purposes, and landscaping, furnishings, and equipment associated therewith.

§ 3. Preparation of Bonds.) * * *.

§ 4. Sale and Delivery of Bonds—Deposit of Proceeds.) * * *.

§ 5. Bonds Tax Exempt.) * * *.

§ 6. Bonds a General Obligation of the State of North Dakota.) Upon receipt of payment therefor, the industrial commission shall deliver to each purchaser of bonds issued under this Act the bonds purchased by him, and upon delivery of such bonds the full faith and credit and unlimited taxing resources of the state of North Dakota shall stand pledged for the punctual full payment of each and all of such bonds and the interest thereon to the lawful holder and owner thereof as bonds and coupons become due and are presented for payment.

§ 7. Facility Fee—Board to Set Amount.) The board of higher education shall set a facility fee to be charged annually to each student at the time of his registration at an institution under the control of the board. Such fee shall be in an amount to be determined by the board, and the total of all such fees charged shall be in an amount sufficient to pay not less than fifty percent of the interest and principal of such bonds as such principal and interest become due in the following year and to and including July 1 in the year thereafter. All amounts collected under this section shall be deposited in the educational building fund which is hereby created.

§ 8. Transfers from General Fund.) On the first day of each month commencing with the first month after any bonds are issued under authority of this Act and until all such bonds are retired, the state treasurer shall transfer the amount of forty thousand dollars from the state general fund to the educational building fund, except that during the biennium beginning July 1, 1965, and ending June 30, 1967, such transfer shall be in the amount of twenty thousand dollars each month.

§ 9. Appropriation.) There is hereby appropriated from the educational build-ing fund all funds required for the payment of interest and principal of all bonds issued and sold under this Act as such principal and interest become due, and this appropriation and any taxes and other provisions for payment of said bonds and interest shall not be repealed or discontinued until the said bonds and interest shall have been paid.

§ 10. Educational Building Fund.) All moneys transferred in accordance with sections 7 and 8 of this Act shall be placed in the educational building fund. This fund shall be maintained by the state treasurer and shall be used and disbursed for the following purposes:

1. To provide for the payment and security of the principal and interest due on any bonds issued under the provisions of this Act. For this purpose the treasurer shall transfer from the educational building fund to the sinking fund as provided for in section 11 of this Act, whenever necessary, so much of the moneys in the educational building fund then on hand as may be required, or all thereof if necessary, to produce a balance in the sinking fund equal to the sum of the interest due and to become due within eighteen months plus the principal due and to become due within twenty-four months thereafter on all outstanding series of such bonds.

2. To finance the construction, reconstruction, and betterment of buildings and the provision of equipment therefor at state institutions of higher learning as may be authorized from time to time by the legislative assembly, provided that no disbursement for such purpose shall be made at any time when the balance in the sinking fund is less than specified in subsection 1 of this section.

§ 11. Sinking Fund.) The sinking fund for the payment of bonds issued under this Act, together with interest thereon, shall be established and maintained in the office of the state treasurer

who shall be its official custodian and shall at all times maintain adequate books and records thereof. The state treasurer shall make reports of the condition of the sinking fund to the board of higher education on its request. Any taxes levied and all sums appropriated and transferred under the provisions of sections 10, 12, and 13 of this Act for payment of such bonds and interest shall be deposited in the sinking fund and shall be disbursed by the state treasurer solely for the payment of the bonds and interest thereon directly or through a paying agent to be designated by him.

§ 12. Transfer from Bond Proceeds Fund and Tax Levy for Deficiency.) If on December 1 of any year the balance in the sinking fund is less than the sum necessary to pay principal and interest upon such bonds due during the succeeding twelve months, a sum sufficient to pay such amounts shall be transferred from the special fund in the state treasury in which the proceeds of the bonds have been deposited, and if after the transfer the balance in the sinking fund is still less than the sum necessary to pay principal and interest on such bonds due during the succeeding twelve months, the state treasurer shall immediately inform the members of the state board of equalization who shall forthwith meet and proceed to levy a tax upon the aggregate net assessed value of the taxable property within the state in such amount as is required to make up such deficiency.

§ 13. Transfer of Balance.) Upon the retirement of all general obligation bonds issued hereunder and the interest thereon any unexpended balance in the sinking fund created by this Act shall be transferred by the state treasurer to the educational building fund.

§ 14. Certificates of Indebtedness Against Uncollected Taxes.) * * *.

§ 15. Investment of Funds.) * * *.

§ 16. Protection of Purchaser.) * * *.

§ 17. Mortgage—Delivery to Escrow Agent.) At the time of the execution of the bonds authorized by this Act, there shall be executed a mortgage upon state-owned enterprises and industries as authorized by section 182 of the Constitution to secure the payment of bonds and interest thereon, which property now has a value in excess of the requirements of section 182 of the Constitution. Such mortgage shall be executed by the governor and attested to by the secretary of state and shall be deposited with a trustee to be selected by the industrial commission, to be held by such trustee to secure the prompt payment of bonds and interest thereon until all bonds are retired.

§ 18. Limitation of Action.) * * *.

§ 19. Appropriation of Proceeds.) The proceeds of any and all bonds sold pursuant to the provisions of this Act are hereby appropriated to the state board of higher education for use in the construction and equipping of facilities authorized by this Act at state institutions of higher education as determined by the board and in accordance with such schedule of priorities as may be prescribed by such board.

§ 20. Emergency.) * * *.

The material facts necessary to the determination of the issues are not in dispute and are summarized in the trial court's order granting defendants' motion for summary judgment and denying plaintiff's motion for summary judgment, as follows:

* * * Plaintiff is a resident, citizen and taxpayer of the State of North Dakota and is the father of two minor sons, both of whom are regularly enrolled in the University of North Dakota. Plaintiff brings the action on behalf of himself and all other residents, citizens and taxpayers of the State of North Dakota, and all other parents and guardians of resi-

dent minors, and of all resident adult students who are now enrolled, or intend to enroll, as students in any of the State institutions of higher learning in the State of North Dakota.

The Defendants are members of the Industrial Commission of the State of North Dakota and the State Board of Higher Education of the State of North Dakota.

On or about June 17, 1965, the State Board of Higher Education adopted a resolution requesting the Industrial Commission to authorize and direct the issuance and sale and delivery of Five Million Dollars of general obligation bonds of the State of North Dakota pursuant to the provisions of Chapter 155 of the 1965 Session Laws of North Dakota. On or about July 23, 1965, the Industrial Commission adopted and approved said resolution of the Board of Higher Education and determined that said Industrial Commission should proceed with the issuance and sale of said bonds in accordance with the Resolution.

On or about the 22nd day of April, 1965, the State Board of Higher Education by motion duly seconded and carried, determined that a facility fee of $15.00 per academic year would be charged each student at any and all of the State institutions of higher learning under the supervision and control of the State Board of Higher Education. The fee is pledged to be kept in force until the bonds are paid in full, in said amount, and the amount of such fees is sufficient to pay not less than 50% of the interest and principal of the bonds as such principal and interest become due in the following year and to and including July 1st in the year thereafter; the entire amount collected therefor is to be deposited in the educational building fund for the retirement of said bonds and interest thereon.

There is presently outstanding, as a general obligation of the State of North Dakota, bonds in the amount of $3,397,-100.00. There is presently on hand in sinking funds for the payment of principal and interest on such outstanding bonds the sum of $4,008,150.48.

The minor sons of the Plaintiff, before being permitted to enroll in the collegiate course at the University of North Dakota, were required to and did each pay the sum of $7.50, being one-half of the annual facility fee of $15.00 imposed as hereinbefore set forth. They desire and intend to continue in and complete the full four-year collegiate course at the University.

Unless restrained, the Industrial Commission of the State of North Dakota will proceed to advertise for the sale of and will sell and issue $5,000,000.00 of general obligation bonds of the State.

Plaintiff, in his complaint, alleges that Chapter 155 of the 1965 Session Laws of the State of North Dakota is contrary to and in violation of Sections 11, 13, 25, 69(23), 148 and 182 of the North Dakota Constitution and requests that the State Board of Higher Education and the Industrial Commission of the State of North Dakota be restrained and enjoined from further proceedings under said Act; that Chapter 155 of the Session Laws of 1965 be declared to be in violation of the Constitution of the State of North Dakota and wholly void and of no force or effect, or in the alternative, that the provisions therein set forth for the establishment of a facility fee by the State Board of Higher Education and the provisions thereof authorizing the issuance of general obligation bonds in the sum of Five Million Dollars, and the provisions thereof authorizing the mortgaging of properties of the State institutions and industries as security for the payment of said bonds, be declared in violation of the Constitution of the State of North Dakota, and wholly void and of no force or effect.

The plaintiff has challenged the constitutionality of the Act as being in violation of the following provisions of the North Dakota Constitution:

1. Section 182 of the Constitution, limiting the amount and manner of incurring state indebtedness.

2. Section 148 of the Constitution, providing for a system of free public schools extending through all grades up to and including the normal and collegiate course.

3. Section 69, subsection 23 of the Constitution, prohibiting the enactment of special laws for the assessment and collection of taxes.

4. Section 11 of the Constitution, prohibiting the enactment of laws of a general nature which do not have uniform operation.

5. Section 13 of the Constitution, prohibiting any law which deprives any person of his property without due process of law.

6. Section 25 of the Constitution, vesting the legislative power of the State in the Legislature and in the people.

■ In considering the challenge to the constitutionality of the Act every presumption in favor thereof will be adopted.

Every statute must be held to be constitutional, unless it is clearly violative of some constitutional provision, and one who alleges a statute to be unconstitutional must be able to point to the constitutional provision that is contravened. State ex rel. Kaufman v. Davis, 59 N.D. 191, 229 N.W. 105.

We said in Wilder v. Murphy, 56 N.D. 436, 218 N.W. 156, that:

Where the constitutionality of a statute depends upon the power of the Legislature to enact it, its validity must be tested, not by what has been or is being done under it, but by the things which may be done under it.

■ We are guided by certain rules that control in the consideration of the challenge to the constitutionality of the Act made by the plaintiff. In Wilder v. Murphy we said:

It is difficult, if not impossible, to lay down exactly the line that marks the distinction between administrative and legislative functions. As was said by the Supreme Court of the United States in Mutual Film Corporation v. Industrial Commission, 236 U.S. 230, 35 S.Ct. 387, 59 L.Ed. 552, Ann.Cas.1916C, 296: 'While administration and legislation are quite distinct powers, the line which separates exactly their exercise is not easy to define in words. It is best recognized in illustrations. Undoubtedly the Legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply. If this could not be done there would be infinite confusion in the laws, and in an effort to detail and particularize, they would miss sufficiency both in provision and execution.'

Does the legislature, in the Act, "declare the policy of the law and fix the legal principles which are to control," and is the administrative body invested only with the power "to ascertain the facts and conditions to which the policy and principles apply"?

We are of the opinion, and we so hold, that the Act does not "declare the policy of the law and fix the legal principles which are to control" but, in fact, attempts to delegate to the Board powers and functions of the Legislature, and that the Act is unconstitutional.

The first paragraph of Section 25 of the Constitution reads as follows:

The legislative power of this state shall be vested in a legislature consisting of a

senate and a house of representatives. The people, however, reserve the power, first, to propose measures and to enact or reject the same at the polls; second, to approve or reject at the polls any measure or any item, section, part or parts of any measure enacted by the legislature.

The plaintiff points out in support of his contention the following:

Section 19 of the Act appropriates the proceeds of the bonds sold to the Board of Higher Education for the use in the constructing and equipping of facilities authorized by this Act at state institutions of higher education *as determined* by the board and in accordance with such schedule of priorities as *may be prescribed by such board,* whereunder the board may determine the kind of facility to be constructed, where constructed, when constructed, the amount of the cost thereof, and the use thereof.

Section 7 of the Act provides that the Board shall set the amount of the annual facility fee without any guidelines set by the Legislature for determining the amount of the fee.

The Act permits the Board to issue general obligation bonds up to $10,000,-000.00 without any specific instructions as to how much of its authority it is to use, and without any basis for determining how much thereof shall be used.

The Act gives to the Board of Higher Education the authority to determine what property or properties of the state industries are to be mortgaged to secure the payment of the bonds, and the amount thereof.

The Board of Higher Education is a constitutional body created by Article 54 of the North Dakota Constitution approved and ratified by the people on June 30, 1938, for the control and administration of the educational institutions of higher education, and by section 8 thereof Article 54 was made self-executing.

The respondents argue that the State Board of Higher Education is a constitutional body created for the control and administration of state institutions of higher education and that, therefore, our decisions in the cases of Wilder v. Murphy and Kaufman v. Davis are not controlling. They point out that these cases were decided before the adoption of Article 54 and during the time when the control and administration of our educational institutions was in the Board of Administration. As the Board of Administration was created by the legislature · the respondent agrees that the legislature was prohibited by Section 25 of the Constitution from delegating legislative power to the State Board of Administration.

Article 54 of our Constitution created the State Board of Higher Education for the "control and administration" of state institutions of higher education of the State and provides its powers in Section 6 of the Act.

Section 6(a) provides:

* * * it shall assume all the powers and perform all the duties now conferred by law upon the Board of Administration in connection with the several institutions hereinbefore mentioned, * *

Section 6(b) provides that the State Board of Higher Education shall have full authority over the institutions with the right, among its other powers, to prescribe, limit or modify the courses offered in the institutions and in furtherance of its power may delegate to its employees details of the administration. It shall have full authority to organize and reorganize "within constitutional and statutory limitations" the work of each institution and do everything necessary and proper for the efficient and economic administration of the institution.

Section 6(c) directs the Board to prescribe for said institutions standard systems of accounts and records and to make regular reports to the legislature and the governor.

Section 6(d) directs the State Board of Higher Education to prepare and present to the State Budget Board and to the legislature a single unified budget covering the needs of all the institutions under its control.

Section 6(e) provides that the Board "shall have the control of the expenditure of the funds belonging to, and allocated to such institutions and also those appropriated by the legislature," but "that funds appropriated by the legislature and specifically designated for any one or more of such institutions, shall not be used for any other institution."

We must examine Article 54 of the Constitution to determine whether it grants to such Board jurisdiction to carry out the functions attempted to be delegated to such Board under Section 19 of the Act. This Article grants to the State Board of Higher Education power for the "control and administration" of the institutions described therein. The word "control" is defined as a "power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee." See Black's Law Dictionary, Third Edition. Webster's Third New International Dictionary Unabridged defines the word "control" as "to exercise restraining or directing influence over: regulate, dominate, rule: have power over" and "power or authority to guide or manage: directing or restraining domination." The word "administration" is defined as "performance of executive duties: management, direction, superintendence." See Webster's Third New International Dictionary Unabridged.

Thus it becomes clear that the Board is created for the "control and administration" of the said educational institutions, which in general terms means the management and supervision thereof.

Section 6(a), which incorporates by reference the existing[1] powers of the State Board of Administration as they existed at the time of the adoption of Article 54, does not incorporate powers to make decisions for the providing of facilities as defined by Chapter 155. The Act defines the word "facilities" to mean and include "buildings used for classroom, library, laboratory, workshop, administration and maintenance purposes, and landscaping, furnishings, and equipment associated therewith." The State Board of Administration was created by Chapter 71, Session Laws of 1919, "for the general supervision and administration of all State Penal, Charitable, and Educational Institutions of the State, and the General Supervision of the Public and common Schools of the State." The State Board of Administration possessed no legislative powers. Their powers were supervisory and administrative only.

Thus the State Board of Higher Education in assuming the powers of the State Board of Administration was not vested with legislative powers.

We now examine Sections 6(b) through 6(e) in the light of the declaration of purpose that the Board is created for the "control and administration" of the State institutions of higher education. It is clear that these powers vested in the State Board of Higher Education are administrative. The constitutional provision does not create a "miniature legislature." The Board of Higher Education became a part of the executive branch of government.

For the reasons aforesaid, the respondents' argument must fail and the constitutionality of Chapter 155 of the Session Laws of 1965 will be tested in accordance with the principles handed down in the case of Wilder v. Murphy, 56 N.D. 436, 218 N.W. 156, and State ex rel. Kaufman v. Davis, 59 N.D. 191, 229 N.W. 105.

This court, in Wilder v. Murphy and Kaufman v. Davis, considered the question of the delegation of legislative power involving the authority of the Board of Administration to enter into arrangements with holding associations for the construc-

tion of dormitories at any of the educational institutions of the state.

In Wilder v. Murphy, this court, in construing Chapter 257, Session Laws of 1927, held that it delegated legislative power to an administrative board in violation of section 25 of the Constitution, whereas in State ex rel. Kaufman v. Davis this court, in construing Chapter 102, Sessions Laws of 1929, held that it does not delegate legislative power to the Board of Administration in violation of section 25.

This court, in distinguishing between the two statutes, said in Kaufman v. Davis:

The statute under consideration here is strikingly different from that involved in Wilder v. Murphy [56 N.D. 436, 218 N.W. 156], supra. Under the act there involved the board of administration was authorized to enter into arrangements with holding associations for the construction of dormitories at any or all of the educational institutions of the state, without any limit as to number of dormitories, or amount to be expended in the construction of each. There was no pretense of a legislative determination that there existed any necessity for a dormitory at any of such institutions, and no rule was formulated by the Legislature to guide the board of administration in determining whether there was such necessity; but the board of administration was vested with practically unlimited and arbitrary power as regards the construction of dormitories under the act. So far as the provisions of that act were concerned, the board of administration might have granted permission to construct a dormitory at one institution and denied the right to construct a dormitory at another institution under an identical state of facts. It might even have granted the right to construct a dormitory at one institution and denied the right to construct a dormitory at another institution, even though there was a greater necessity for a dormitory at the latter institution. The act under consideration here is different. Here there is a specific statement as to the number of dormitories to be constructed and a limit of the cost of each dormitory. It is in effect a legislative determination that a necessity exists justifying the construction of any or all of the buildings specified in the act upon the conditions therein prescribed; and the board of administration is granted power to perform, and charged with the corresponding duty of performing, the acts prescribed by the law. In short, the legislation involved in Wilder v. Murphy [56 N.D. 436, 218 N.W. 156], supra, delegated to the board of administration the power to make law; whereas, in the statute involved here, "the legislature itself has passed upon the expediency of the law, and what it shall be," and the board of administration "is entrusted with no authority or discretion upon these questions." State ex rel. Railroad & Warehouse Commission v. Chicago, Milwaukee & St. P. R. Co., 38 Minn. 281, 298, 37 N.W. 782; Hampton, Jr. & Co. v. United States [276 U.S. 394, 406, 48 S. Ct. 348, 72 L.Ed. 624, 629], supra. See also Enderson v. Hildenbrand, 52 N.D. 533, 204 N.W. 356. By the statute in question here the Legislature declared the policy of the law and fixed the legal principles which are to control in all cases, and merely conferred authority or discretion upon the board of administration as to the execution of the law. This is not a delegation of legislative power which is inhibited by the Constitution, but the conferring upon an administrative board of power to administer and carry a law into execution. 1 Cooley's Const.Limitations (8th Ed.) pp. 228–232. For, while the Legislature may not delegate the power to make the law to any other body or authority, and thus escape the duties and responsibilities placed upon it by the Constitution, yet, having enacted a law, and thus determined for itself the legislative policy and declared a rule of action, the legislature may confer upon a board, charged with

the duty of carrying such law into execution, the power to direct the details of a plan, the general outlines of which have been prescribed in the statute. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 407, 48 S.Ct. 348, 72 L.Ed. 624, 629, 12 C.J. 847; State ex rel. Wisconsin Inspection Bureau v. Whitman, 196 Wis. 472, 220 N.W. 930. In short, as was said by Chief Justice Marshall: "The maker of the law may commit something to the discretion of the other departments." Wayman v. Southard, et al., 10 Wheat. (1) 46, 6 L.Ed. (253) 263.

The statute under consideration here does not purport to authorize the board of administration to make law. The Legislature has made the law. It has assumed the responsibility and discharged the duty placed upon it by the Constitution. It has declared the policy. It has prescribed the rule of action. It has merely conferred upon the board of administration certain "authority and discretion to be exercised in the execution of the law, and under and in pursuance of it." This the Legislature may do. State ex rel. Railroad & Warehouse Commission v. Chicago, M. & St. P. R. Co. [38 Minn. 281, 298, 37 N.W. 782], supra; Hampton Jr. & Co. v. United States [276 U.S. 394, 406, 48 S.Ct. 348, 72 L.Ed. 624, 629], supra.

■ How do the provisions of the Act under consideration here compare with the standards set forth in Wilder v. Murphy and in Kaufman v. Davis? The present Act falls into the same objectionable pattern that was held to be unconstitutional in Wilder v. Murphy as an unlawful delegation of legislative power.

In this case the Legislature has not determined the question of the necessity of any particular type of building, at any particular institution, nor laid down any rule to· guide the Board of Higher Education in determining these questions. It has authorized the construction of facilities at some or all of the institutions. It has attempted to delegate to the Board the power to determine what facilities shall be constructed at the different institutions, and the amount, if any, to be expended at each. This, we find, is an unconstitutional delegation of legislative authority. Wilder v. Murphy, 56 N.D. 436, 218 N.W. 156. The Board of Higher Education is granted the power to "declare the policy of the law and fix the legal principles which are to control." This is a legislative function.

As we hold the Act unconstitutional, because it delegates legislative powers to the Board of Higher Education in violation of Section 25 of the North Dakota Constitution, it is not necessary to pass on the other challenges to the constitutionality of the Act.

The summary judgment appealed from is reversed and the cause is remanded with direction that summary judgment be ·entered in favor of the plaintiff.

TEIGEN, C. J., STRUTZ and ERICKSTAD, JJ., and ILVEDSON, D. J., concur.

Honorable ROY A. ILVEDSON, District Judge of the Fifth Judicial District, sitting in place of Honorable THOMAS J. BURKE.