MONTANA–DAKOTA UTILITIES CO., Northern States Power Company, and Otter Tail Power Company, Plaintiffs, Respondents, and Cross-Appellants,

v.

Helgi JOHANNESON, as Attorney General for the State of North Dakota, et al., Defendants and Respondents,

and

Baker Electric Cooperative, Inc., et al., Defendants, Appellants, and Cross-Respondents.

Civ. No. 8355.

Supreme Court of North Dakota.

Aug. 23, 1967.

Rehearings Denied Oct. 31, 1967.

Pearce, Engebretson, Anderson & Schmidt, Bismarck, for plaintiff, respondent, and cross-appellant Montana-Dakota Utilities Co., Earl H. A. Isensee, Minneapolis, Minn., of counsel.

Wheeler & Daner, Bismarck, for plaintiff, respondent, and cross-appellant Northern States Power Co., Nelson, Brusven & Sommers, Minneapolis, Minn., of counsel.

Wheeler & Daner, Bismarck, for plaintiff, respondent, and cross-appellant Otter Tail Power Co., Field, Arvesen, Donoho & Lundeen, Fergus Falls, Minn., of counsel.

Paul M. Sand, First Asst. Atty. Gen., Bismarck, for Helgi Johanneson, Atty. Gen., defendant and respondent.

Helgi Johanneson, Atty. Gen., John E. Adams, Asst. Atty. Gen., and Norton M. Hatlie, Sp. Asst. Atty. Gen., and Commerce Counsel of Public Service Commission, Bismarck, for defendant and respondent Public Service Commissioners.

James Morris, Bismarck, Vogel & Bair, Mandan, Frederick Bernays Wiener and William C. Wise, Washington, D. C., W. T. DePuy, Grafton, Roy A. Holand, LaMoure, Paul G. Kloster, Dickinson, Herbert L. Meschke, Minot, Alfred A. Thompson, Bismarck, Myron H. Bright, Fargo, William Lindell, Washburn, Eugene Anthony, Watford City, Q. R. Schulte, Stanley, L. G. Ulmer, Mandan, Calvin Calton, Crosby, O. B. Benson, Bottineau, Robert Chesrown, Linton, Kent Johanneson, Langdon, Fabian Noack, Carrington, Johnson & Milloy, Wahpeton, Maurice E. Cook, Bowman, John Richardson, Hazen, and Bjella, Jestrab, Neff & Pippin, Williston, for defendant, appellant, and cross-respondent electric co-operatives.

STRUTZ, Chief Justice (on reassignment).

Three investor-owned public utilities, Montana-Dakota Utilities Company, Northern States Power Company, and Otter Tail Power Company, doing business in the State of North Dakota, bring this action for a declaratory judgment against twenty-one rural electric co-operatives, joining the Attorney General of the State and members of the Public Service Commission of the State of North Dakota who, by the law which is being challenged, are required to administer its provisions. This action is brought to test the validity of Chapter 319 of the Session Laws of 1965, and to seek an injunction against its enforcement.

After issue was joined, both the plaintiffs and the defendants moved for summary judgment. By moving for summary judgment, all parties concede that there is no genuine issue as to any material facts to be determined in the action, and they seek to have the court enter a declaratory judgment under Rule 56, North Dakota Rules of Civil Procedure.

In passing on the motion for summary judgment, the trial court held that a portion of Section 3 of the Act was unconstitutional. It further held that the portion found to be invalid was severable from the balance of the law, and that the balance of the Act was valid. Judgment was entered accordingly.

The defendant co-operatives appealed from such summary judgment, and from the whole thereof, demanding trial de novo in this court. The plaintiff public utilities cross-appealed from that portion of the summary judgment which held a portion of the Act constitutional and from the finding of the trial court that the portion held unconstitutional was severable from the rest of the Act.

The Act in question is generally referred to as the "Territorial Integrity Law." Its purpose was to amend Sections 49–03–01 and 49–03–05 of the North Dakota Century Code which required a public utility, before beginning construction or operation of a public utility plant or system, or an extension thereof, to obtain from the Public Service Commission a certificate of public convenience and necessity. Section 2 of the Act provides that no electric public utility shall begin construction or operation of its public utility plant or system, or extension thereof, without first obtaining from the Public Service Commission such certificate of public convenience and necessity, and then goes on to provide:

"* * * nor shall such public utility henceforth extend its electric transmission or distribution lines beyond or outside of the corporate limits of any municipality, nor shall it serve any customer where the place to be served is not located within the corporate limits of a municipality, unless and until, after application, such electric public utility has obtained an order from the public service commission of the state of North Dakota authorizing such extension and service and a certificate that public convenience and necessity require that permission be given to extend such lines and to serve such customer."

Section 3 of Chapter 319, the law being attacked, reads as follows:

"The public service commission of the state of North Dakota shall not issue its order or a certificate of public convenience and necessity to any electric public utility to extend its electric distribution lines beyond the corporate limits of a municipality or to serve a customer whose place to be served is located outside the corporate limits of a municipality unless the electric co-operative corporation with lines or facilities nearest the place where service is required shall consent in writing to such extension by such electric public utility, or unless, upon hearing before the commission, called upon notice, it shall be shown that the service required cannot be provided by an electric co-operative corporation. Such certificate shall not be necessary if the public service commission approves an agreement between a public utility and the rural electric co-operative serving the area which includes the station to be served and which agreement designates said station to be in an area to be served by the public utility."

Section 4 of the law provides for certain exclusions from the provisions of the Act.

The plaintiff public utilities contend that the law is unconstitutional for a number of reasons. They contend that a public utility is required to make application for a certificate of public convenience and necessity to extend its service to a new customer outside of a municipality, while co-operatives are not required to make such application to serve new rural customers. They further contend that co-operatives are given a monopoly in rural areas and are allowed to operate without supervision or regulation by the Public Service Commission, while public utilities are regulated in all aspects of their operations. They say that co-operatives, under this law, can infringe upon an area now served by a public utility if it is outside of the corporate limits of the municipality, without any

regulation by the Public Service Commission. The public utilities further allege that a public utility can have new customers within the corporate limits of a municipality only if this does not interfere with the co-operative services already provided in the municipality; that co-operatives have the right to complain against a public utility, but that the public utility has no right to complain against co-operatives for interfering with customers or encroaching upon the territory of the public utility. They assert that the law gives electric co-operatives certain rights as utilities, and yet specifically provides that they shall not be deemed public utilities.

Finally, the public utilities contend that the law disregards customer preference, and the user of electric energy is compelled to be an unwilling subscriber of a co-operative in order to get service from such co-operative.

Thus the argument of the public utilities is that Chapter 319 of the Session Laws of 1965 is unfair, arbitrary, unreasonable, and discriminatory in favor of one group providing electrical services at the expense and prejudice of electric public utilities and at the expense of the public.

The trial court held that Section 3 of the Act, with the exception of the last sentence thereof, was unconstitutional in that it prohibits the Public Service Commission "from exercising its legislatively delegated power of protecting the public in determining 'public convenience and necessity.' "

The trial court held that Section 3 delegated such power to a nonregulated competitive class of citizens or corporations, without providing adequate safeguards or standards for the promulgation of rules and regulations to protect the public interest, and that it was an unconstitutional delegation of legislative power and was in violation of the due-process clauses of the State and Federal constitutions. The trial court, however, did find that such portion of the law which it found to be unconstitu-

tional was severable from the balance of the Act, and that the balance of the law was valid and in full force and effect.

■ The appeal by the defendant co-operatives in an action tried to the court, from a summary judgment, and from the whole thereof, demanding trial de novo in this court, raises all of the issues in the case on appeal, those that are favorable as well as those which are unfavorable to the appellants. No additional issues are raised, therefore, by the cross-appeal of the public utilities.

■ Since there were no genuine issues of fact for the trial court to determine, the entry of summary judgment by the trial court, on motion, was proper. Rule 56, N.D.R.Civ.P.

■ Chapter 319 is a regularly enacted Act of the Legislature and, as such, can be held invalid and unconstitutional only if at least four of the judges of this court shall so decide. Sec. 89, N.Dak. Constitution.

■ This court must presume that an Act of the Legislative Assembly is consti-tutional and valid, and any doubts as to its constitutionality must, if at all possible, be resolved in favor of its validity. State ex rel. Johnson v. Baker, 74 N.D. 244, 21 N.W.2d 355; Herr v. Rudolf, 75 N.D. 91, 25 N.W.2d 916, 169 A.L.R. 1388.

■ In passing on the validity of a leg-islative enactment, every reasonable pre-sumption is in favor of the constitution-ality of the law, and this presumption is conclusive in the absence of clear proof to the contrary. Stark v. City of James-town, 76 N.D. 422, 37 N.W.2d 516; North-western Improvement Co. v. Morton Coun-ty, 78 N.D. 29, 47 N.W.2d 543; Menz v. Coyle (N.D.), 117 N.W.2d 290; Interna-tional Printing Pressmen and Assistants Union of North America v. Meier (N.D.), 115 N.W.2d 18; State v. Gamble Skogmo, Inc. (N.D.), 144 N.W.2d 749.

■ The exercise of the power to hold Acts of a legislature invalid is one of the highest functions of the courts. It has been held that this power involves one of the greatest responsibilities of the courts, and that it should be exercised with great restraint, caution, and even with reluc-tance. 16 Am.Jur.2d, "Constitutional Law," Sec. 109, p. 294.

■ In exercising the power to declare enactments of the Legislature invalid, the courts therefore start with the presumption that the Assembly acted within its consti-tutional powers, even though the law may re-sult in some inequality. State v. Gamble Skogmo, Inc., supra.

The first question facing us on this ap-peal is whether, after invoking a presump-tion in favor of the validity of Chapter 319 of the Laws of 1965, this statute infringes upon constitutional restrictions so palpably that there is no room for any question or doubt as to its validity. In other words, is the law so unfair, arbitrary, unreasonable, and discriminatory against the public utili-ties as to make it unconstitutional?

■ Where the language of a statute is clear, certain, and unambiguous, the courts have only the duty of giving effect to the legislative intent thus expressed in the Act. Asbury Hospital v. Cass County, 72 N.D. 359, 7 N.W.2d 438.

■ The wisdom and the necessity of the law are questions of policy for the Legislature and are not matters for the court to take into consideration. Asbury Hospital v. Cass County, supra.

■ In the light of these general ob-servations, let us now examine the law which the plaintiffs contend is unconstitu-tional. It cannot be successfully main-tained that the Legislature does not have the power to regulate public utilities under the police powers of the State. The plain-tiffs make no such contention. It is conceded, we believe, that the power to reg-ulate includes the power to eliminate

competition. 73 C.J.S. Public Utilities § 11 et seq., pp. 1006 and 1007.

■ The plaintiffs contend, however, that Section 3 of Chapter 319, which provides for the giving of consent by the rural electric co-operative nearest the rural area proposed to be served by the public utility, is an unlawful delegation of legislative authority. This court has held in a number of cases that legislative power cannot be delegated. Wilder v. Murphy, 56 N.D. 436, 218 N.W. 156; State ex rel. Kaufman v. Davis, 59 N.D. 191, 229 N.W. 105; Nord v. Guy (N.D.), 141 N.W.2d 395.

■ But to invalidate a statute because of unlawful delegation of legislative authority, it must clearly appear that the power which is delegated is, in fact, legislative. Anderson v. Peterson, 78 N.D. 949, 54 N.W.2d 542.

Do the provisions of Section 3, Chapter 319, of the Session Laws of 1965 constitute an unlawful delegation of legislative authority to electric co-operatives? The provisions of Section 3 of Chapter 319 require a public utility to secure a certificate of public convenience and necessity to extend its lines beyond the corporate limits of a municipality, unless the rural electric co-operative with lines nearest the place where the service is required shall consent in writing to such extension, or unless, upon a hearing before the Commission, it is shown that such rural electric co-operative cannot provide such service. Thus, for all practical purposes, the co-operative, and not the Public Service Commission, is the body that determines whether a certificate of public convenience and necessity shall be granted to a public utility in the area outside the limits of the municipality.

■ Under Section 3, the co-operative has this power regardless of whether it or the utility is best qualified to serve the area and regardless of the fact that the public utility applying to serve such area might more economically render such service. No guidelines are set out in the law to be followed by the co-operative in making such determination, and no safeguards are provided against arbitrary action by the co-operative. As this court pointed out in Nord v. Guy, supra, and in the earlier case of Wilder v. Murphy, supra, we must be guided by certain rules which control in our consideration of the challenge by the public utilities to the constitutionality of the Act. The Legislature must declare the policy of the law and must definitely fix the legal principles which are to control the action taken. If the Public Service Commission is permitted only to ascertain the facts and conditions to which the policy, as declared by the Legislature, is to apply, the Act will be held constitutional. But where the Act attempts to delegate, to either the Public Service Commission or the co-operative, powers and functions which determine such policy and which fix the principles which are to control, the Act is unconstitutional. Fink v. Cole and Fink v. Jockey Club, 302 N.Y. 216, 97 N.E.2d 873.

The co-operatives in this case argue that, since the Legislature could have provided by law that the public utilities shall not, under any circumstances, be permitted to serve in rural areas, as defined by law, the public utilities are in no position to complain, because they are permitted to serve in some rural areas where the co-operative nearest the area to be served gives its consent for them to so serve. There clearly is no merit to this argument. If the Legislature had determined that the public utilities should serve only in urban areas, that would have been a legislative determination. But Section 3 of Chapter 319 presents a different situation. The Legislature itself does not determine who is to furnish electrical service in rural areas. It leaves that determination to the electric co-operative, and this clearly is an unlawful delegation of legislative authority.

The trial court found the last sentence of Section 3 of Chapter 319 to be valid.

We believe this finding was error. There is no distinction between this last sentence and the balance of Section 3, which it found to be invalid. In both instances, a public utility wishes to expand into a rural area. In both instances, the electric co-operative nearest the area to be served must agree to such extension. In one case, it consents in writing that the public utility applying to furnish such service may extend its lines into such area; in the other, it enters into a formal approval of such extension by the public utility. We can find no distinction in the two situations, and, whether it be by consent or agreement, the co-operative, and not the Public Service Commission, actually determines whether the certificate shall be granted.

■ We therefore hold that all of Section 3 of Chapter 319 is unconstitutional, as an unlawful delegation of legislative authority.

The public utilities also contend that all of Chapter 319 is unconstitutional, in that the entire law is discriminatory and arbitrary, requiring the public utilities to secure certificates of convenience and necessity before extending service to new customers, while co-operatives are permitted to extend service to new customers outside of municipalities without securing any approval or certificate of convenience and necessity. They contend that electric co-operatives are given a monopoly to operate in areas outside of municipalities, without any supervision, while public utilities are strictly regulated and supervised in all aspects of their operation. They further contend that the Act gives to co-operatives the right to complain against public utilities, but gives to the public utilities no similar right to complain against co-operatives which unreasonably interfere with customers of the public utility or encroach upon their territory.

It is true that public utilities are regulated, while co-operatives are not. Public utilities must secure certificates of public convenience and necessity to begin operation in a municipality and before extending their service outside of a municipality, while a co-operative need not secure such certificate to do business outside of a municipality. Does this constitute an unjust discrimination between persons or groups furnishing the same commodity—electricity —so as to constitute a denial of due process and equal protection under the law?

We believe there is a valid basis for such classification of these suppliers of electrical energy which legally justifies such a distinction, where the Legislature sees fit to provide for such a grouping. In the case of a public utility, the consumer has absolutely no voice in the operation of the business. It is operated for private benefit and profit of the stockholders and is given a virtual monopoly by law in the area where it serves. Unless some supervision is provided for, excessive rates and unjust procedures could be imposed, adopted, and practiced. An electric co-operative, on the other hand, is operated without profit. Its consumers are members of the co-operative and, as members, are in control and have a voice in the policies of the co-operative. The directors selected by the members fix the rates to be charged. Furthermore, if rates are charged which are excessive and bring in more than is needed for maintenance and costs of operation, the excess, under the law, is to be returned to the members, for the law specifically provides that electric co-operatives are to be operated without profit [Sec. 10–13–05, N.D.C.C.] and that, if rates charged produce an excess over what is needed for operation and maintenance and for reserves for improvement, it shall be returned to the members [Sec. 10–13–06, N.D.C.C.]. Furthermore, if the policies of the co-operative are not satisfactory to the consumers, they, as members, have the power to change them. But, in the case of a public utility, consumers have absolutely no voice in the operation of the business, in the making of its policies, or in the fixing of its rates.

■ The State and Federal constitutions require all laws to have uniform operation, and the granting of any special privilege or immunity as to any class of citizens is expressly prohibited. The constitutional limitations do not, however, prohibit classification, provided such classification is reasonable for the purposes of the legislation, is based upon proper, justifiable distinctions concerning the purposes of the law, is not arbitrary, and is not a subterfuge to shield one class or to burden another, or to oppress unlawfully in its administration. F. W. Woolworth Co. v. Gray, 77 N.D. 757, 46 N.W.2d 295.

Here, the Legislature, by enacting Chapter 319 of the 1965 Session Laws, has established certain regulations and policies to govern the extension of electrical services in the State of North Dakota. If the business is operated by a public utility, its operation is regulated by the Public Service Commission. If it is operated by an electric co-operative, and is under the control of the members themselves, the Legislature, in its wisdom, assumed that such members, who control their own business, would adequately protect their own interests and no control by the Public Service Commission was deemed necessary.

■ The fact that the co-operatives are given the right, under the Act, to complain to the Public Service Commission against public utilities which violate any provisions of the Act, but public utilities are given no similar right to complain to the Public Service Commission against electric co-operatives, would not, of itself, make the Act invalid. The Act does give the public utilities the right to bring actions in the district courts of the State for any injury they might suffer because of the violation of this Act by any electric co-operatives. Thus, while public utilities cannot complain to the Public Service Commission, they are not without an adequate remedy.

■ The Legislature, under our Constitution, is one of three independent branches of government. Under the principle of separation of powers, the authority to pass legislation is vested in the Legislative Branch of the government exclusively. As a part of the law-making power of the Legislative Assembly, it has the right to determine legislative policy. The policies which it adopts may be wise or otherwise, but it is not the prerogative of the courts to question the wisdom of the laws which the Legislature enacts. We believe that the enactment of a law which provides that public utilities be supervised and regulated by the Public Service Commission, and which does not provide for such supervision or regulation of electric co-operatives, which are supervised and controlled by their members, would be within such legislative authority. This determination is a policy matter. We do not find that, in enacting this statute, the Legislature made any unconstitutional grant of special privileges or immunities to electric co-operatives. What it did was to establish classifications for the suppliers of electrical energy, which we believe are based on legally justifiable distinctions.

■ Legislative policy, while not conclusive on the courts, is entitled to great consideration. In re Garrison Diversion Conservancy District (N.D.), 144 N.W.2d 82. And such policy established by the Legislature is subject only to limits fixed by the State and Federal constitutions. James v. Young, 77 N.D. 451, 43 N.W.2d 692, 20 A.L.R.2d 1086.

The legislation here under consideration is not found to be arbitrary or discriminatory in the sense that it is in violation of constitutional restrictions, and the contention that the law disregards customer preference is without merit.

■ Having held that Section 3 of Chapter 319 is unconstitutional, the question now arises whether those portions of the Act found unconstitutional are severable from the balance of the law. In other words, can the balance of the Act stand and be given effect, even though a portion

of the law is invalid, or must the entire law fall, as contended for by the public utilities? The question as to whether portions of a statute which are constitutional shall be upheld and given effect, even though portions of the law are struck down as unconstitutional, involves primarily the ascertainment of the intention of the Legislature. If the objectionable parts are severable from the rest of the law in such a way that it would be presumed that the Legislature would have enacted such portions without the invalid parts, the failure of the invalid portions would not necessarily render the entire statute invalid. In such case, the statute may be enforced as to those portions of the law which are constitutional. 16 Am.Jur.2d, "Constitutional Law," Sec. 186, p. 414. If, however, the constitutional and the unconstitutional portions are so dependent upon each other as to warrant the belief that the Legislature intended them to take effect in their entirety or not at all, it follows that if the whole cannot be given effect, it must be presumed that the Legislative Assembly would not have passed the valid portions independently, and the entire law is then valid.

■ Where the Legislature has used a saving clause in passage of the Act, the intention of the Legislature, of course, is clear. This court has held, on several occasions, that in such event the legislative intent will be given effect. Menz v. Coyle (N.D.), 117 N.W.2d 290. Such saving clause clearly indicates to the court construing the statute that the law would have been passed even without the invalid parts. Tooz v. State, 76 N.D. 599, 38 N.W.2d 285.

The Legislature, in passing Chapter 319 of the Laws of 1965, did not, however, express its intention in this way, for the Act carries no saving clause. So we do not, in this case, have the intention of the Legislature definitely expressed in the Act itself. However, the intent of the Legislature in a situation of this kind is expressed in Section 1–02–20, North Dakota Century Code, as we point out hereinafter.

■ In Department of State Highways v. Baker, 69 N.D. 702, 290 N.W. 257, 129 A.L.R. 925, this court had under consideration the validity of Chapter 170 of the Session Laws of 1939, assessing and levying a special license tax of one cent a gallon on all motor-vehicle fuels sold by licensed dealers in the State of North Dakota. This Act contained no saving clause. The penalty provisions of the Act were found to be unconstitutional, but the balance of the law was upheld in a three-to-two decision. The court, in that case, citing Malin v. LaMoure County, 27 N.D. 140, 145 N.W. 582, 50 L.R.A.,N.S., 997, Ann. Cas.1916C, 207, said:

"Where a part of a statute is unconstitutional, that fact does not require the courts to declare the remainder void also, unless all the provisions are connected in subject-matter depending upon each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the Legislature would have passed the one without the other."

See also State ex rel. Hughes v. Milhollan, 50 N.D. 184, 195 N.W. 292, at p. 299.

Are the various sections of Chapter 319 so dependent upon each other or connected in meaning that it cannot be presumed that the Legislature would have passed the valid portions of that Act without those found to be invalid? We think not. The provisions of Section 1 require that a public utility, before beginning construction or operation of a public utility plant or system, or the extension thereof, obtain a certificate of convenience and necessity from the Public Service Commission; Section 2 provides that no public utility shall begin construction or operation of a public utility plant or system, or the extension thereof, without first securing a certificate of public convenience and necessity, nor shall it extend its transmission or distribution lines outside the corporate limits of any municipality without an order of the Public Service Commission authorizing such ex-

tension; Section 4 provides for certain exclusions from the limitations on extension of service; Section 5 provides for enforcement of the Act and restraints against a public utility for interference with another public utility or an electric co-operative, and permits the bringing of actions against electric public utilities or electric co-operatives for recovery of damages; and Section 6 lists certain definitions.

■ We believe that the provisions of Section 3 can be stricken from the Act without in any manner affecting the validity of the balance of the law, since such provisions are not dependent upon each other or so connected in meaning that it must be presumed that the Legislature would not have passed Sections 1, 2, 4, 5, and 6 without Section 3.

■ Our Legislature, in enacting the Century Code, foresaw the possibility of having a part of a law declared invalid by the courts. So it provided that in the event any clause, sentence, chapter, or part of any title should be adjudged to be invalid, such judgment should not affect nor invalidate any other part of the law. Sec. 1–02–20, N.D.C.C. It is our view that this rule of interpretation is intended to apply to amendments to the Code as well as to the original Code itself.

The public utilities have failed to point out any provision of the Constitution which makes sections other than Section 3 of Chapter 319 unconstitutional.

For reasons stated in this opinion, the judgment of the trial court is modified to hold all of Section 3 of Chapter 319 unconstitutional, and, as modified, it is affirmed.

KNUDSON and ERICKSTAD, JJ., and CLIFFORD SCHNELLER, D. J., concur.

MURRAY, J., a member of the Court at the time of submission of this case, deeming himself disqualified, did not sit with the Court on argument, Hon. CLIFFORD SCHNELLER, one of the judges of the Third Judicial District, sitting in his stead.

PAULSON, J., not being a member of the Court at the time of submission of this case, did not participate.

TEIGEN, Judge (dissenting).

It is clear to me that the Legislature, in adopting Chapter 319 of the Session Laws of 1965, established a policy of law that a public utility, as defined therein, shall not be permitted by the Public Service Commission to expand upon its electrical services in the rural areas of the State, unless and until it has obtained an order from the Public Service Commission authorizing such extension and service and, with one exception, a certificate of public convenience and necessity. Section 3, quoted in the majority opinion, governs the Public Service Commission in this decision. It provides that the Public Service Commission shall not issue its order or a certificate of public convenience and necessity to any electric public utility to extend its electric lines beyond the corporate limits of a municipality, or to serve a customer whose place to be served is located outside the corporate limits of a municipality, unless it finds that certain facts exist. These facts are that either the electric co-operative, with lines or facilities nearest the place where the service is required, has consented in writing to such extension by the electric public utility, or that the service required cannot be provided by an electric co-operative corporation. The certificate is not required if an agreement has been entered into between a public utility and the proper electric co-operative, provided such agreement is approved by the Public Service Commission. These conditions are guidelines which govern the Public Service Commission in administering the policy of the law as established by the Legislature in this area.

The majority, without specifically saying so, have construed Section 3 to grant a

monopoly in the rural areas of the State to the electric co-operatives. I do not agree with this construction of the section. I do not agree that the question whether a public utility may extend its services into a rural area is to be determined only by the electric co-operative nearest the place where such services are to be rendered. I believe the Public Service Commission has the power to grant such extension in the absence of the consent or agreement by the electric co-operative and where the electric co-operative can physically provide the services were it not for the refusal of the customer to be served to apply for it.

The statutes do not require a rural customer to seek membership in the electric co-operative serving his area, or request its service as a nonmember. Therefore, if a potential rural customer, for reasons of his own, refuses to receive central-station service from the electric co-operative serving his area, it appears to me that if the electric co-operative cannot provide it, production of such proof in a hearing before the Public Service Commission authorizes it to issue its order permitting an extension of service by the public utility, if it also finds that public convenience and necessity tests are met.

Thus, the Legislature, in its wisdom, has provided protection for the person who resides in a rural area and who chooses not to receive central-station service from the electric co-operative serving his area because he does not wish to contract with the electric co-operative. He is protected to the extent that he is not required, against his will, to seek service from a non-policed supplier of electricity which he may feel will discriminate against him as did Lillethun in Lillethun v. Tri-County Electric Co-operative, Inc., N.D., 152 N.W.2d 147 [Civil No. 8390], or for other reasons.

On the other hand, the Legislature, in its wisdom, has not provided such person an absolute right to be served by an electric public utility. The question whether he shall be served by it remains for decision by the Public Service Commission, after ascertaining all the facts and conditions to which the policy of the law applies, including the question of public convenience and necessity.

The State has exercised its police powers to control investor-owned public utilities for many years. While complete jurisdiction was placed in the Public Service Commission over investor-owned public utilities, the Legislature provided the Public Service Commission shall have no jurisdiction over "rates, contracts, services rendered, the safety, adequacy, or sufficiency of facilities, or the rules or regulations of any public utility * * * not operated for profit, * * *." Section 49–02–01.1, N.D.C.C. Chapters 49–01 through 49–07, N.D.C.C., which are made applicable to public utilities, and Chapter 49–20, N.D.C.C., which is applicable to all electric companies, impose various requirements upon public utilities which do not apply to electric co-operatives. The police power of the State has not been extended over electric co-operatives in the area of rates, contracts, services rendered, safety, adequacy, or sufficiency of facilities, except safety regulations when their lines are located in, under, or across public highways or public places, Section 49–20–02, N.D.C.C., or for the construction or reconstruction of high voltage or amperage lines, Section 49–20–03, N.D.C.C.

The relationship between the patron and the electric co-operative is based on contract which is not subject to control by the Public Service Commission. There is no buyer-seller relationship as the member-owner is both buyer and seller. An electric co-operative operates as a nonprofit corporation and surplus earnings are credited back to its patrons who furnished them. It is, undoubtedly, for these reasons that the Legislature has not extended its police powers over rates, contracts, services rendered, etc., over the electric co-operative corporations.

Thus, when a business relationship comes into existence between a rural customer and an electric co-operative, it is on a voluntary basis on the part of the customer who becomes a patron. An electric co-operative is required by Section 10–13–04, N.D.C.C., to serve the customer and accept his application for membership, if he resides in a rural area served by the electric co-operative and agrees to abide by the provisions of its bylaws. But a potential rural customer is not required by law to contract with the co-operative.

The majority appear to construe Chapter 319 of the Session Laws of 1965 to require a potential rural customer to contract for electrical service with the co-operative serving his area if it refuses to consent or enter into an agreement that he be served by a public utility, unless the Public Service Commission finds as a fact that the electric co-operative cannot serve the customer for physical or geographic reasons only. I do not agree with this construction. I think an electric co-operative cannot provide the service within the definition of the Act if the customer refuses to become a patron of the electric co-operative. To hold otherwise forces a potential rural customer to contract against his will. A citizen's right to contract or not to contract is one of the liberties that is inherent and inalienable. It belongs to every citizen by the law of the land and every man is at liberty to freely deal or refuse to deal with his fellowman. 16 Am. Jur.2d, *Constitutional Law,* Sec. 373. There are certain limitations but these are applicable only where the police powers of the State are invoked based on some reasonable basis. 16 Am.Jur.2d, *Constitutional Law,* Secs. 374 and 375.

Our Legislature has not seen fit to invoke the police powers in this area and it is improper for us to assume that a potential rural customer for electricity is now compelled to contract with the electric co-operative serving his area, unless the electric co-operative consents or agrees otherwise. To give such a construction to this statute, in my opinion, makes it vulnerable to attack on a constitutional basis by a resistant potential customer. It is true that under the police powers the State can interfere with private rights when necessary to protect the public in many areas but we are not concerned here with the question of whether or not the State may exercise it. The simple fact is that the State has not done so.

In my opinion, Chapter 319 of the Session Laws of 1965 does not broaden the rights of the electric co-operative, nor does it exclude public utilities from serving rural areas. It merely tightens the guidelines by which the Public Service Commission is governed in permitting expansion of public utility service in rural areas and requires the issuance of a certificate of public convenience and necessity where the utility and the co-operative have not entered into an agreement acceptable to the Public Service Commission. It does not eliminate customer preference but subjects the customer's preference for public utility service to an inquiry and decision by the Public Service Commission on the question of public convenience and necessity.

It appears to me that if we construe this statute otherwise, it will be violative of Section 1 of the State Constitution and the due process clause of Section 13. Section 1 provides:

All men are by nature equally free and independent and have certain inalienable rights, among which are those enjoying and defending life and liberty; acquiring, possessing and protecting property and reputation; and pursuing and obtaining safety and happiness.

The word "liberty" as stated in State v. Cromwell, 72 N.D. 565, 9 N.W.2d 914, "includes the right of the citizen to be free to use his faculties in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or vocation, and for that purpose to enter into all contracts which may be proper, necessary, and essential to

his carrying out these purposes to a successful conclusion. Within the meaning of the term 'liberty' is also included the right to buy and sell, to select freely such tradesmen as the citizen himself may desire to patronize, to manufacture, to acquire property, to live in a community, to have a free and open market, the right of free speech, of self-defense against unlawful violence, and, in general, the opportunity to do those things which are ordinarily done by free men."

If the statute violates Section 1 of the Constitution, it also violates the last clause of Section 13 thereof as it provides:

* * * No person shall * * * be deprived of life, liberty or property without due process of law.

Thus the due process clause protects and insures the enjoyment of the rights declared by Section 1.

It is my view that the service required cannot be provided by an electric co-operative corporation if the potential rural customer for central-station service refuses to contract with the electric co-operative for such service.

For the reasons aforesaid, I am of the opinion that Chapter 319 of the Session Laws of 1965 is not an unlawful delegation of legislative power. I agree that the remaining portions of Chapter 319 are valid.